

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39141-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARC MACIAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Marc Macias appeals his conviction for second degree rape and challenges the admission of statements he made to law enforcement when they showed up at his place of employment, arguing the court erred in concluding he was not in custody at the time he was interrogated at his workplace.  Building on his first issue, Macias contends the deputy engaged in an improper two-step interrogation by obtaining his confession before advising him of his *Miranda*[1] rights.  Alternatively, Macias argues his trial counsel was ineffective for failing to object to the admissibility of the statements.

We conclude that Macias was not in custody at the time of questioning and in turn, the deputy did not engage in a two-step interrogation.  Because Macias cannot show

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

deficient performance, his claim of ineffective assistance of counsel fails. Therefore, his trial counsel was not ineffective for failing to object.

## BACKGROUND

Marc Macias was arrested and charged with second degree rape. Prior to trial, the court held a CrR 3.5 hearing to determine if statements made by Macias were admissible. We summarize the court's findings from that hearing.

The Klickitat County Sheriff's Office received information that Marc Macias was the suspect of a rape allegation. Upon receiving this information, a deputy went to Macias's worksite to speak with him. "At the worksite location, [the deputy] contacted the project manager to see if he could speak with [Macias]." Clerk's Papers (CP) at 28. "The project manager [requested] another employee inform [Macias] that [a deputy] was there to speak with him." CP at 28. Eventually, Macias approached the deputy.

The deputy testified that during the initial interaction he was the only law enforcement officer on scene and Macias was not ordered or required to speak with him. Additionally, Macias was not handcuffed or placed in custody, and the deputy did not draw his weapon.

The conversation began with the deputy asking Macias general questions about the night in question. At first, Macias explained there was normal partying going on but "didn't go into detail about the incident that was claimed." Rep. of Proc. (RP) at 9. Once Macias began making incriminating statements, the deputy decided to read him his

*Miranda* warnings. After reading Macias his *Miranda* rights, Macias stated that he understood his rights, agreed to continue speaking with the deputy, and did not request an attorney.

After Macias made further incriminating statements, the deputy determined it was appropriate to place him under arrest and had Macias escorted off the property. "Once they were off the property, [the deputy] handcuffed and placed [Macias] in the back of the patrol car." CP at 28. While this was occurring, the deputy read Macias his *Miranda* rights a second time. After they were read, Macias did not express confusion, ask for an attorney, or unequivocally state he did not wish to speak with the deputy.

The deputy transported Macias to the Klickitat County Jail. During the car ride there was small talk but the deputy did not "ask him anything else about the incident." RP at 13. Once they arrived at the jail, the deputy read Macias his *Miranda* rights a third time. After reading Macias his rights he did not request an attorney, and Macias did not express confusion. At that point, the deputy continued to interrogate Macias regarding the specific allegations.

From these findings, the court concluded that up until the point he was arrested and placed in the back of the patrol car, Macias was not in custody to a degree associated with a formal arrest. After being arrested and while riding in the patrol car to the police station, Macias was not interrogated. At the police station, Macias was subjected to custodial interrogation after being read his *Miranda* rights. At that point, Macias made a

3

knowing, intelligent, and voluntary waiver of his rights and agreed to answer questions and make statements. The court concluded that all of the statements made by Macias were admissible at trial.

Following a bench trial, the court found Macias guilty of second degree rape. Macias now appeals his conviction.

ANALYSIS

Macias challenges the trial court's conclusion that he was not in custody when the deputy first questioned him at his workplace. In reviewing the issue, we consider the trial court's unchallenged findings from the CrR 3.5 hearing as verities. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Whether a person is in custody is a question of law reviewed de novo. *State v. Escalante*, 195 Wn.2d 526, 531, 461 P.3d 1183 (2020).

The Fifth Amendment to the United States Constitution protects a defendant against self-incrimination. U.S. CONST. amend. V. "*Miranda* warnings were developed to protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). Without these warnings, a suspect's statements made during custodial interrogation will be presumed involuntary. *Id.* at 214. Therefore, this court must first determine whether a defendant was in custody for the purposes of *Miranda*. *State v. Lorenz*, 152 Wn.2d 22, 36-37, 93 P.3d 133 (2004).

4

"Custodial" as it relates to an interrogation "refers to whether the defendant's movement was restricted at the time of questioning." *Id.* at 36. "An objective test is used to determine . . . whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest." *Id.* at 36-37. Under this standard, a detention does not necessarily amount to custody for purposes of *Miranda*. *Escalante*, 195 Wn.2d at 533. Instead, the court considers whether, under the circumstances, there was a serious danger of coercion. *Id.* "Relevant circumstances may include the nature of the surroundings, the extent of police control over the surroundings, the degree of physical restraint placed on the suspect, and the duration and character of the questioning." *Id.* at 534.

In this case, the trial court's conclusion that Macias was not in custody is supported by the court's findings. Macias was at his place of employment, there is no indication that the conversation took place in an enclosed room or building, only one officer was present, Macias was not ordered to do anything and the officer did not exert any control over Macias' movement. Finally, the questioning was brief before *Miranda* warnings were given. These are not circumstances that create a serious danger of coercion.

In support of his argument that the circumstances demonstrated a custodial interrogation, Macias cites to a Ninth Circuit case, *United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008). This case is factually distinguishable. In *Craighead*, eight officers

5

executed a search warrant on a suspect's home and, although the defendant was informed he was free to leave, he was directed into a closed-door room in the home and interrogated for 20 to 30 minutes. *Id.* at 1078-79. The court found that the home was police-dominated and that the defendant reasonably could have believed he was not free to leave. *Id.* at 1079.

Next, Macias argues that the court erred by admitting any statements made following his first set of *Miranda* warnings because the officer deliberately engaged in a two-step interrogation tactic. The two-step interrogation process involves a law enforcement officer initially questioning a suspect during custodial interrogation without providing *Miranda* warnings until the suspect confesses. *See State v. Hickman*, 157 Wn. App. 767, 772, 238 P.3d 1240 (2010). Next, the officer "advised the suspect of [their] *Miranda* rights, acquired a waiver . . . and then resumed interrogation while referring to the suspect's earlier pre-*Miranda* admissions to elicit a post-*Miranda* confession." *See Id.* Courts will look to whether an officer deliberately used a two-step interrogation method to avoid giving proper *Miranda* warnings. *State v. Rhoden*, 189 Wn. App. 193, 200-01, 356 P.3d 242 (2015). Importantly, a two-step interrogation only occurs when both sets of the interrogation take place when a person is in custody. *United States v. Barnes*, 713 F.3d 1200, 1204-05 (9th Cir. 2013).

Macias's argument fails because the trial court concluded that Macias was not in custody when he was first read his *Miranda* warnings, and thus, there could be no two-

step interrogation procedure at that point. Although Macias may have been interrogated by the officer at his workplace, he was not subject to *custodial* interrogation, which would have required *Miranda* warnings. Therefore, because he was not in custody when the first interrogation took place, the deputy did not subject him to a two-step interrogation procedure.

Alternatively, Macias argues he was denied effective assistance of counsel when his trial attorney failed to object to the statements at trial that were the result of a two-step interrogation process. Based on our conclusion that Macias was not subject to a two-step interrogation, we determine that Macias fails to show deficient performance.

Both the Sixth Amendment and art. I, § 22 of the Washington State Constitution guarantee effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Claims of ineffective assistance of counsel are reviewed de novo. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). A successful claim requires the defendant to demonstrate two components: that counsel's performance was deficient, and that deficient performance caused prejudice. *Strickland*, 466 U.S. at 687. Representation is deficient if after considering all circumstances, it falls "'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland*, 466 U.S. at 688). Further, prejudice exists if "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Id*. at 34 (quoting *State v. Kyllo*,

7

166 Wn.2d 856, 862, 215 P.3d 177 (2009)).  To prevail on an ineffective assistance

claim, a defendant must overcome a "strong presumption that counsel's performance was

reasonable." *Kyllo*, 166 Wn.2d at 862.

Because the deputy did not employ an improper two-step interrogation process,

Macias cannot show his attorney's performance was deficient.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.

8